UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GENWORTH LIFE INSURANCE
COMPANY, a foreign corporation,

   Interpleader Plaintiff,

vs.

MARC OLIVER, an individual, and
SHERMAN SWILLEY, an individual,

   Defendants.

Case No. 11-14531

Hon. Nancy G. Edmunds
Magistrate Judge Laurie J. Michelson

_____/

# REPORT AND RECOMMENDATION TO GRANT DEFENDANT SHERMAN SWILLEY'S MOTION FOR SUMMARY JUDGMENT [24]

  This case involves a dispute between a decedent's husband and son over the validity of the decedent's late-life decision to change the annuity beneficiary from one to the other. Plaintiff Genworth Life Insurance Company ("Genworth"), the party responsible for paying the annuity, filed this interpleader action after receiving competing claims from Defendants Marc Oliver and Sherman Swilley for the proceeds of an annuity held in the name of Marcia Oliver.[1] *Pro se* Defendant Marc Oliver is the son of the decedent, Marcia Oliver. And, until a few months before Ms. Oliver's death, he was the primary beneficiary of the annuity. At that time, however, Ms. Oliver made her husband, Defendant Sherman Swilley, the primary beneficiary. Marc Oliver claims that his deceased mother was not then mentally competent to change the beneficiaries on her annuity policy because of her declining health. He also argues that the change in beneficiaries was the result of undue influence exerted by Mr. Swilley.

  This matter is currently before the Court on Defendant Swilley's Motion for Summary

---

[1] Genworth is paying the annuity proceeds into the Court while the proper beneficiary is determined, but has otherwise been dismissed from the case.

Judgment. (Dkt. 24.) Following the close of discovery, Mr. Swilley contends that he is entitled to the annuity proceeds as a matter of law because decedent's lung cancer and resulting treatments did not render her mentally incompetent to name him the beneficiary, she properly completed the change-of-beneficiary forms, and there is no evidence that her decision to make the change was the result of undue influence. The Court has carefully reviewed the relevant pleadings and the parties' briefing and finds that oral argument would not aid the decision-making process. *See* E.D. Mich. LR 7.1(f). For the reasons set forth below, the Court RECOMMENDS that Swilley's Motion for Summary Judgment be GRANTED.

## I.     FACTUAL BACKGROUND

The decedent Marcia Oliver married Defendant Sherman Swilley, her third husband, in 1989. (Dkt. 24, Mot. for Summ. J., Ex. 3, Aff. of Sherman Swilley, ¶ 1.) In 1990, Ms. Oliver settled a personal injury matter in which she received an annuity for monthly payments for 24 years. Genworth issued the annuity effective October 31, 1990. (Dkt. 1, Compl., ¶ 8.) At that time, Ms. Oliver named her then 21-year old son, Defendant Marc Oliver, as the primary beneficiary and made her husband, Swilley, the secondary beneficiary. (*Id*. at ¶ 9; Mot. for Summ. J. at 2.) In 2004, decedent was diagnosed with lung cancer. (Swilley Aff., ¶ 4.) She received treatment and therapy on a regular basis for the next seven years. (*Id*.) On December 14, 2004, Genworth received and approved a beneficiary change request naming Havelynde LeBomme, decedent's granddaughter, as secondary beneficiary. (Compl., ¶ 9 and Ex.C.) Marc Oliver remained the primary beneficiary. (*Id.*)

According to affidavits submitted by decedent's sister, niece, and close personal friend, the relationship between decedent and her son became strained during the last few years of decedent's

life. Decedent told her niece that her relationship with her son was not a good one and that it upset her. (Mot. for Summ. J., Ex. 4, Affidavit of Ashley Rapley, ¶ 3.) More specifically, decedent's close friend, Sandra Green, averred that decedent was angry and upset because Oliver, who had moved to California in the late 1980s, would fail to call her in Michigan, fail to acknowledge gifts she sent to him and his children, and fail to visit when he was in town. (Mot. for Summ. J., Ex. 1, Affidavit of Sandra Green, ¶ 9.) According to decedent's sister, in early 2010, Oliver told his mother to "never call me again in life." (Mot. for Summ. J., Ex. 2, Affidavit of Julie Lowe, ¶ 6.) Thus, the two did not speak for the year before Ms. Oliver's death. (*Id*. at ¶ 7.) It appears Ms. Oliver was particularly upset when her son did not call her on Mother's Day 2011. (Green Aff., ¶ 12.)

According to Green, in early 2011, decedent discussed with her a desire to change the primary beneficiary on her Genworth annuity to Swilley since he was a devoted husband who took care of her needs. (Green Aff. at ¶¶ 11, 13.) Some time after Mother's Day 2011, decedent obtained a change-of-beneficiary form from Genworth. (Swilley Aff. at ¶ 8.) Swilley avers that he assisted his wife in filling out the form, but that she signed it. (*Id*. at ¶ 9.) Decedent had an office visit with Dr. Stoltenberg on May 13, 2011 and, to the best of Dr. Stoltenberg's assessment, he believed Ms. Oliver was mentally coherent and was receiving appropriate care at home. (Mot. for Summ. J., Ex. 5.) On May 27, 2011, Genworth received and approved a beneficiary change request naming Sherman Swilley as primary beneficiary and Havelynde LeBomme as secondary beneficiary. (Compl., ¶ 11 and Ex. D.) On June 14, 2011, Genworth notified decedent that it would update the change of beneficiaries in its records. (*Id*. at ¶ 12, Ex. E.) Marc Oliver visited his mother in the hospital just before she died, but she was heavily sedated and unable to acknowledge or respond to

his presence. (Lowe Aff. at ¶ 8.) Ms. Oliver died on August 4, 2011 at age 58 from complications due to lung cancer. (Compl., ¶ 13.) Her husband, sister, niece, and friend all indicate that decedent's mind remained sharp through her final days and that she and Swilley had a good and caring 22-year marriage.

On August 25, 2011, Oliver wrote to Genworth and stated that in the last months of her life, due to her medical condition, the decedent did not have the capacity to change the beneficiaries, and thus, he was challenging the change in beneficiary done in May 2011. (Compl. ¶ 16 and Ex. F.)

## II. ANALYSIS

### A. Standard of Review

In an interpleader action, a party holding money or property to which it admittedly has no claim "sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992). The Sixth Circuit has explained that an interpleader action typically proceeds in two stages:

> During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. 7 Wright, Miller & Kane, Federal Practice and Procedure § [1714 (3d ed. 2001).] During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial. *Id.*

*United States v. High Technology Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007).

During the first stage, Genworth was ordered to deposit the disputed funds due under the annuity into the court registry until this matter is resolved by order of the court (Dkt. 4) and the

4

parties agreed to dismiss Genworth from the action (Dkt. 13). *See also* 28 U.S.C. § 2361 (providing that, in a statutory interpleader action, the district court "may discharge the plaintiff from further liability.") In taking these steps, the Court has already determined that this matter is appropriately brought as an interpleader action.

At the second stage of an interpleader action, where the court is called upon to resolve the rights of competing claimants, "when the material facts are undisputed, it is appropriate for a Court to resolve questions of law and enter judgment directing payment of the disputed fund to the appropriate party." *Aegon Structured Settlements, Inc. v. Hicks*, No. 10- 14996, 2011 U.S. Dist. LEXIS 147231, *7 (E.D. Mich. Dec. 22, 2011) (quoting *Aon Corp. Accidental Death & Dismemberment Plan v. Hohlweck*, 223 F. Supp. 2d 510, 514 (S.D.N.Y. 2002)); *see also Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) ("When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment.").

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitle to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that the moving party may carry its

summary judgment burden without "produc[ing] evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof"). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matshushita*, 475 U.S. at 587.

When the nonmoving party fails to adequately respond to a summary judgment motion, the court is not required to search the record to determine whether genuine issues of material fact exist. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989); *see also* Fed. R. Civ. P. 56(c)(1). Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Ultimately, the Court must determine whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252.

### B. The Annuity Proceeds Should Be Distributed To Sherman Swilley

The validity and effect of Marcia Oliver's beneficiary designation is governed by Michigan law. *See Aegon Structured Settlements, Inc. v. Hicks*, No. 10-14996, 2011 U.S. Dist. LEXIS 150425, at *9 (E.D. Mich. Nov. 16, 2011), *adopted by* 2011 U.S. Dist. LEXIS 147231 (E.D. Mich. Dec. 22, 2011). Swilley contends that, pursuant to Michigan law, Ms. Oliver (1) properly executed the requisite change of beneficiary form; (2) was mentally competent to do so; and (3) was not unduly influenced in her decision. In ruling on a recent Interpleader action, another court in this District summarized the legal standards governing these very issues:

> Under Michigan law, a designation of beneficiaries is presumed valid. A party challenging a change of beneficiaries as being the result of fraud or duress, or as having been made while the insured was mentally incompetent, bears the burden of proving fraud, duress, or mental incompetence. *See Chrysler Corp. v. Nohmer*, 319 Mich. 153, 156, 29 N.W.2d 149, 151 (1947); *Estate of Erickson v. Michigan*

> *Conference Ass'n of Seventh-Day Adventists*, 202 Mich. App. 329, 333, 508 N.W.2d 181, 183 (1993). To establish undue influence, the party challenging the designation must show that the grantor "was subjected to threats, misrepresentations, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *Erickson*, 202 Mich. App. at 331, 508 N.W.2d at 182-83; *see also*, *In re Karmey Estate*, 468 Mich. 68, 75, 658 N.W.2d 796, 799 (2003). Importantly, "[m]otive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient." *Erickson*, 202 Mich. App. at 331, 508 N.W.2d at 183; *see also*, *Chrysler Corp.*, 319 Mich. at 163, 29 N.W.2d at 153 ("Mere opportunity to exert undue influence is not sufficient.").
>
> "Similarly, the test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries . . . is whether the insured then had sufficient mental capacity to understand the business in which the insured was engaged, to know and understand the extent of the insured's property, how the insured wanted to dispose of it, and who are dependent upon the insured." *Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183; *see also*, *Harris v. Copeland*, 337 Mich. 30, 34, 59 N.W.2d 70, 72 (1953). Under this test, "[a] person may be incapable of conducting his business successfully and still not be mentally incompetent." *Erickson*, 202 Mich. App. at 333, 508 N.W.2d at 183.
>
> Finally, an "unexecuted intention to change the beneficiary is not sufficient to effectuate such a change." *Gignac v. Columbian Nat'l Life Ins. Co.*, 321 Mich. 201, 203, 32 N.W.2d 442, 443 (1948). For a valid change of beneficiary to occur, there must be substantial compliance with the method of changing the beneficiary provided for by the insurance contract or annuity. *See id.*

*Id.* at *10-12 (footnote omitted).[2]

Here, the unrebutted evidence provided by Swilley demonstrates the validity of his

---

[2] The Court noted that the Michigan courts apply the same standards to annuities as they do to bequests and insurance contracts. *Id.* at *11, n. 5 (citing *Mutual Life Ins. Co. of N.Y. v. Hughes*, 292 Mich. 644, 650, 291 N.W. 39, 41 (1940)).

designation as the primary annuity beneficiary. It appears that decedent was only 58 years old at the time of her death. While she had lung cancer, there is nothing in the record that indicates this caused her to be mentally incapacitated in any way. To the contrary, Swilley has provided uncontroverted affidavits from decedent's family members and close friend that decedent remained emotionally and mentally strong through the end of her life and that her decision to change her beneficiary was based on rational thought and consideration.[3] Decedent's sister, who averred that the two were "extremely close" and would see and/or speak with one another several times per week, explained:

> [M]y sister has always been strong willed with a sharp mind throughout her life. The onset of lung cancer made her more determined and focused during her last years. Her mind was sharp up through her final days.

(Lowe Aff. at ¶¶ 2-4.) Decedent's niece, who also spoke with her aunt several times a week, likewise averred that "during her sickness her mind stayed focused and on track. She was always

---

[3] The Court recognizes that affidavits used to support a motion for summary judgment must set out facts that would be admissible under the rules of evidence. Fed. R. 56(c)(4). While some of the affiants relate statements made to them by the decedent, the Court believes this information is admissible under Federal Rule of Evidence 803(3) as evidence of the decedent's state of mind. *See, e.g., Swedish Match North America Inc. v. Tucker*, No. 09-00068, 2010 U.S. Dist. LEXIS 68710, at *12-13 (W.D. Ky. July 7, 2010) ("Assuming that this testimony is offered for the truth of the matter asserted, the Court concludes that it is admissible under the exception for 'statement[s] of the declarant's then existing state of mind," i.e., [decedent's] "intent" to change his beneficiary." (citing *Staelens ex rel. Estate of Staelens v. Staelens*, 677 F. Supp. 2d 499, 503 (D. Mass. 2010) (holding that statements made by ex-husband as to his intent to retain ex-wife as beneficiary were admissible under state of mind exception); *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 388-89 (D.S.C. 1993) (finding that decedent's "statements clearly indicate a desire to change [his] beneficiary . . . . [and] are therefore admissible pursuant to Rule 803(3)"); *Cugier v. Cugier*, No. 05-1050, 2006 U.S. Dist. LEXIS 71372, at *10, n.9 (S.D. Ind. Sept. 29, 2006) ("For the purposes of this summary judgment motion we find the affidavits . . . [fall under] a valid exception to the hearsay rule under Fed. R. Evid. 803(3) because they purport to express the decedent's then existing state of mind, emotion, sensation, or physical condition."); Moreover, in making its recommendation, the Court has relied much more on the affiants' personal observations than their hearsay statements.

sharp." (Rapley Aff. at ¶ 4.) Decedent's close friend of nine years who spoke with her regularly and visited her at the hospital, also described a woman that "always had a clear mind" and "[w]hile she was in pain, it did not seem to effect her mental fortitude." (Green Aff. at ¶ 10.) Green further averred:

> That Marcia Oliver was not impulsive. She always thought through the important decisions and discussed them before taking action. The action to change the beneficiary on her Genworth Annuity was discussed with me before she made the decision to change the beneficiary.

(*Id*. at ¶ 14.) These personal observations by family and friends were confirmed by decedent's doctor. Decedent had an office visit two weeks before changing the beneficiaries on her annuity. Her doctor has provided a letter indicating that he believed decedent was "mentally coherent." (Mot. for Summ. J., Ex. 8, May 24, 2012 Stoltenberg Ltr.)

During the course of discovery in this matter, Swilley served Interrogatories on Oliver that asked for the factual support for Oliver's assertion that decedent did not have the mental or physical capacity to complete the Change of Beneficiary form. (Mot. for Summ. J., Ex. 8.) In response, Oliver simply indicated that both he and Carmen LaBomme spoke with decedent prior to May 27, 2011 and she was ill. (*Id*.) This does not create a genuine issue of material fact regarding decedent's mental capacity to understand and appreciate her annuity and how she wanted the proceeds to be inherited.

Oliver's support for his claim of undue influence is decedent's "medical records, medical provider and family." (*Id*.) But he has not provided the Court with any of this evidence. He claims his discovery is incomplete, but discovery has been closed for several months and he never sought an extension. Nor does he provide any indication of what this additional discovery would show.

9

On the other hand, Swilley has provided evidence from decedent's medical provider and family that there was no such undue influence. The letter from decedent's doctor indicates that she was receiving appropriate care at home. (Mot. for Summ. J., Ex. 8.) Her sister and niece both state, based on their personal observations and close interactions with decedent, that decedent and Swilley had a good, supportive marriage and showed care and concern for one another. (*Id*. at Exs. 2 and 4.) Swilley has averred that he never tried to influence his wife when it came to her son. (*Id*. at Ex. 3, ¶ 6.) Swilley acknowledges that he helped decedent fill out the change-of-beneficiary form, but states that she signed it. (*Id*. at ¶ 9.) There is simply nothing in the record to suggest decedent "was subjected to threats, misrepresentations, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel [her] to act against [her] inclination and free will." *Erickson*, 202 Mich. App. at 331.[4]

To the extent that Oliver challenges the validity of the procedures his mother used to change the primary beneficiary, this argument also lacks evidentiary support. Pursuant to the Genworth Annuity Policy, "The Payee will receive the Annuity payments . . . . The Owner may change the Payee at any time by sending Notice to [Genworth]." (Mot. for Summ. J., Ex. 9.) On May 27, 2011, decedent faxed to Genworth a Beneficiary Change Form that contains her signature. (*Id*. at Ex. 6.)

In sum, Oliver has failed to come forward with any evidence to create a genuine issue of material fact as to the validity of the designation of Swilley as the primary beneficiary of decedent's annuity policy.

Oliver asks this Court to excuse his failure and give him additional time to marshal evidence

---

[4] Under Michigan law, no presumption of undue influence arises by the fact of marriage. *In re Karmey Estate*, 468 Mich. 68, 74-5, 658 N.W.2d 796 (2003).

in support of his position. The Court declines this request because it does not comply with Federal Rule of Civil Procedure 56(d). That Rule provides:

> If the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Contrary to the requirements of Rule 56(d), Oliver has not presented any affidavit or declaration, or any explanation for why he was unable to obtain facts essential to his opposition during the discovery period. Nor has he explained what these facts might show. After Swilley filed his Motion for Summary Judgment, Oliver simply filed an "objection" without any discussion, analysis, or argument. (Dkt. 33.) On July 30, 2012 – three months after the discovery cut-off date – Oliver filed a Supplemental Response in which he contends that his discovery has not been completed. (Dkt. 35.) He indicates that he has not deposed Mr. Swilley and that a deposition transcript of Carmen LaBomme provides circumstantial evidence that decedent did not consent to change her annuity beneficiary in May 2011. (*Id.*) Oliver does not explain the substance of Ms. LaBomme's testimony nor does he try to refute through his own testimony any of the evidence provided by Swilley.

As another Court in this District aptly explained in dealing with a prior version of Rule 56(d):

> "[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) [now 56(d)] to set out

11

> reasons for the need for discovery in an *affidavit."  Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted)(emphasis added). The *Cacevic* Court went on to state that "the importance of complying with Rule 56(f) cannot be overemphasized. 'If the appellant has not filed either a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.'" *Id.* Defendant White has not filed a motion under Rule 56(f), nor mentioned Rule 56(f) in her Response, nor filed an affidavit under Rule 56(f). Counsel's bare statements in the Response are not sufficient to defeat Defendant Biggs' Motion for Summary Judgment due to inadequate discovery.

*Metro. Life Ins. Co. v. Biggs*, No. 01-71707, 2001 U.S. Dist. LEXIS 25280, at *7 (E.D. Mich. Oct. 31 2001), *aff'd*, 68 F. App'x. 644 (6th Cir. 2003); *see also Caretolive v. FDA*, 361 F.3d 336, 345 (6th Cir. 2011) (explaining that under Rule 56(d) "the party must at least specify what information it is missing. [Plaintiff's] affidavit is an attempt to countermand this simple requirement. Although [plaintiff] may be confident that with additional information it can show that the [defendant's Freedom of Information Act] response was incomplete, nothing in this affidavit instills the same confidence in us.").  As in *Metro Life*, the Court finds that, even under the more lenient standards applied to *pro se* litigants, Oliver's Supplemental Response fails to comply with Rule 56(d). *See Murphy v. Grenier*, 406 F. App'x. 972 (6th Cir. 2011).

### III.   CONCLUSION

For all of the reasons set forth above, the Court finds that Defendant Swilley has met his burden of showing there is no genuine issue of material fact that decedent's May 2011 designation of him as the primary beneficiary of her Genworth Annuity is valid.  Defendant Oliver has failed to meet his burden in opposing Swilley's summary judgment motion: he has not presented any evidence to show there is a material issue for trial regarding decedent's mental competence and free

will to make Swilley the primary beneficiary.  Nor has Oliver complied with the requirements of Rule 56(d) to obtain further discovery.

Accordingly, this Court recommends that Defendant Sherman Swilley's Motion for Summary Judgment (Dkt. 24) be **GRANTED**.  Additionally, the oral argument previously scheduled for August 15, 2012 is hereby **CANCELLED**.

## IV.  FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

Date:   August 9, 2012                                               s/Laurie J. Michelson
                                                                                        Laurie J. Michelson
                                                                                        United States Magistrate Judge

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 9, 2012.

                                      s/Jane Johnson
                                      Deputy Clerk